Todd A. Burgess (Bar No. 019013)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
todd.burgess@gknet.com
Attorneys for GF Finance, Inc. and Stephen T. Hansen

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| GF FINANCE, INC.,  ☐ | Case No. 2:16-bk-10282 |
| STEPHEN T. HANSEN, ☐ | Case No. 2:16-bk-10283 |
| Debtors. | |
| This Filing Applies to:<br>**X**   Both Debtors<br>☐   Specified Debtor | |

## MOTION TO TRANSFER CASE ASSIGNMENT AND FOR JOINT ADMINISTRATION

GF Finance, Inc. ("GFF") and Stephen T. Hansen ("Hansen" and together with GFF, the "Debtors"), debtors and debtors in possession in the above captioned chapter 11 cases (the "Bankruptcy Case"), respectfully request that the Court enter an Order, pursuant to Rule 1015(b), Fed.R.Bankr. P., and LR 1015-1, transferring the case assignment (if necessary) of the *In re Stephen T. Hansen* chapter 11 case to the judge assigned to the *In re GF Finance, Inc.* chapter 11 case, and authorizing the joint administration of the Debtors' cases. Joint administration of the cases is appropriate because the Debtors are affiliates. This Motion is supported by the Declaration of Morris C. Aaron filed by the Debtors, and by all other germane matters of record in the cases. In

support of this Motion, the Debtors respectfully represent as follows:

**I.     JURISDICTION.**

1.      On September 7, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors has not been appointed.

2.      In re GF Finance, Inc., Case No. 2:16-bk-10282 is the lowest numbered case.

3.      The Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.      The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a), Rule 1015(b), Fed.R.Bankr.P., and LR 1015-1.

**II.    FACTUAL BACKGROUND.**

5.      Stephen Hansen is a 74 year old resident of the State of Arizona currently residing in Scottsdale with Roberta (aka Bobbi), his loving and devoted wife of 32 years. Mr. Hansen operated successful equipment finance and car rental businesses in the State of North Dakota for more than 40 years.

6.      GFF is a privately-held North Dakota corporation 100% owned by Mr. Hansen. GFF is in the equipment financing and leasing business specializing in over-the-road tractors and trailers, farm equipment, and light-duty construction equipment. GFF has not originated any new business for the past 12 months and is in the process of winding down.

7.      HLR and HLRF are also North Dakota corporations 100% owned by

Mr. Hansen. HLR and HLRF owned and operated successful car rental franchises with multiple locations in North Dakota and Minnesota under a nationally recognized brand. HLR and HLRF are not debtors in these or any other cases.

8. Until March 2016, GFF, HLR, and HLRF all were operated from an office located at 1325 Demers Ave., Grand Forks, ND 58201.

9. In 1995, Steve and Bobbi purchased a home in Arizona to spend the winter months and later relocated to Arizona permanently. Beginning ten to twelve years ago, Steve slowly began to transition away from the day-to-day business operations of GFF, HLR, and HLRF and toward retirement. Over the past seven years, Steve gradually relinquished nearly total operational and financial control over the businesses to his trusted long-time employee and family friend Hadley Freng, with the understanding that Hadley eventually would obtain financing to buy-out Steve. Hadley assumed the role of General Manager for GFF, HLR, and HLRF and was given a general power of attorney by Steve for purposes of operating, safeguarding, and growing the businesses.

10. For whatever reason, Hadley either was unable or unwilling to obtain the financing necessary to purchase the businesses. Instead, unbeknownst to Steve and Bobbi, the facts indicate that Hadley took advantage of the situation and betrayed Steve's trust. For years, through a variety of conduct ranging from gross negligence and mismanagement to breach of fiduciary duty and outright theft Hadley systematically destroyed the successful businesses Steve had spent the better part of his life creating.

11. When Mr. Hansen finally discovered what had happened to the businesses, he retained MCA as an outside Chief Restructuring Officer.

12. By the time MCA was retained on November 29, 2015, GFF, HLR, and HLRF owed over $31 million and were in default with every one of their secured lenders, the companies' books and records were deliberately indecipherable, the GFF loan/lease portfolio hadn't been properly serviced in years, and Hadley had managed to

drain millions of dollars of value from the companies.[1]

13. MCA, with the assistance of Gallagher & Kennedy, P.A. ("G&K"), immediately went to work in an effort to salvage as much of the remaining value in the businesses as possible. Among other things, MCA:

  a. Undertook a detailed investigation and analysis of the companies' financial position with a focus on identifying amounts due to each of the secured lenders, identifying and reconciling collateral, and evaluating the GFF loan/lease portfolio;

  b. Communicated directly with the companies' secured lenders individually and as a group through regular bank group meetings and teleconferences;

  c. Managed the operations of the companies to preserve value;

  d. Managed the servicing of the GFF loan/lease portfolio;

  e. Began reviewing and overseeing the preparation of financial statements;

  f. Created and maintained a detail cash receipts and disbursements budget, and reviewed and approved all disbursements;

  g. Reviewed and attempted to account for all assets of the companies;

  h. Prepared and delivered periodic status reports to all secured lenders; and

  i. Assisted the companies of formulating an overall restructuring

---

[1] The Debtors' investigation of the acts and omissions by Hadley that caused the destruction of the businesses continues. Nothing stated herein is intended to limit in any way the scope or description of the multitude of negligent, intentional, fraudulent, and likely criminal acts committed by Hadley against Steve and the companies or the resulting damages.

5597673#4727154-0001
09/07/16

and repayment plan to maximize the value of the companies and satisfy claims owed to creditors through a negotiated sale of the HLR and HLRF car rental businesses and assets, and the servicing and collection of the GFF loan/lease portfolio.

14. Approximately $24.2 million of the secured debt, all guaranteed by Mr. Hansen and GFF, was owed by HLR and HLRF to five (5) secured lenders (together, the "HLR/HLRF Lenders") under rental car fleet financing arrangements. As of December 15, 2015, the approximate loan balances were as follows:

    a. $4,715,708 was owed to Alerus Bank;

    b. $5,473,923 was owed to Bremer Bank;

    c. $1,701,619 was owed to United Valley Bank;

    d. $899,248 was owed to U.S. Bank; and

    e. $11,406,146 was owed to 1st Source Bank.

15. With the exception of 1st Source Bank, who properly and expertly administered its loans and managed its collateral, each of the other lenders were undersecured to some degree as a result of "double funding" and "out of trust sales" orchestrated by Hadley and enabled by poor lending and loan administration practices.

16. As of December 15, 2015, GFF owed approximately $7.3 million to its five (5) secured lenders (together, the "GFF Lenders") related to its equipment finance business, all of which was guaranteed by Mr. Hansen:

    a. $1,385,303 was owed to Alerus Bank;

    b. $3,559,966 was owed to Bremer Bank;

    c. $833,942 was owed to U.S. Bank;

    d. $374,000 was owed to Frandsen Bank; and

    e. $1,119,372 was owed to Citizen's Community Bank.

17. Similar to the HLR and HLRF situation, MCA discovered that

5597673v1/27154-0001
09/07/16

Hadley mismanaged the GFF secured loan relationships by double funding and in some case triple funding deals, selling equipment out of trust, and either intentionally or negligently failing to properly service the GFF loan/lease portfolio.

18. From December 2015 thru March 2016, HLR and HRLF, with the assistance of MCA and G&K, successfully negotiated a sale of the rental car franchises and related assets. The sale, which closed on March 15, 2016, together with the aggressive sale of hundreds of rental cars and the resolution of complex litigation, resulted in the reduction of the debt owed to the HLR/HLRF lenders from $24.2 million to approximately $1.4 million (the "HLR/HRLF Deficiency").[2]

19. Following the close of the HLR/HLRF sale in March 2016, GFF terminated its remaining employees and relocated its servers and files from Grand Forks, ND to Phoenix, AZ. GFF currently has one part-time independent contractor assisting with the ongoing servicing of the remaining GFF loan/lease portfolio along with support from MCA professionals.[3] GFF leases office space at 4909 N. 44th Street, Phoenix, AZ from Three Tortoises Development & Design, LLC, an affiliate of MCA that owns the building, for $750 per month that includes rent, utilities, internet and phone service, and use of copiers.

20. As of December 31, 2015, GFF was owed outstanding loan/lease receivables from its customers totaling approximately $10.5 million.

21. Following the close of the HLR/HLRF sale, MCA, on behalf of the companies, continued to communicate regularly with the GFF Lenders and the HLR/HLRF Lenders regarding GFF's ongoing efforts to liquidate the GFF loan/lease portfolio and pay-off the remaining debt.

---

[2] MCA and G&K also successfully resolved major litigation between HLR, HLRF, Mr. Hansen and some business partners as part of this sale.

[3] GFF retained two other contractors, an accountant and a former equipment lender through July 2016 to assemble records and locate customers.

22. By late July 2016, the debt owed to the GFF Lenders had been reduced from $7.3 million to approximately $5.1 million. At that time, GFF delivered a detailed budget and forecast to the GFF Lenders and the HLR/HLRF Lenders, prepared by MCA, projecting that by June 30, 2017, GFF would collect approximately $8.3 million from the GFF loan/lease portfolio, an amount sufficient to pay the GFF Lenders ($5.1 million) and the HLR/HLRF Lenders ($1.4 million) in full.

23. GFF and Mr. Hansen proposed a 1-year forbearance to allow GFF sufficient time to liquidate its lease/loan portfolio. As an additional incentive to the lenders, Mr. Hansen agreed: (i) to continue to pay all professional fees incurred in the process, and (ii) to contribute an additional $600,000 over 12 months to guarantee the lenders minimum monthly debt service payments (in addition to the lenders receiving the proceeds of their collateral – through collateral liquidation and regular borrower payments – on a monthly basis).

24. Two lenders formally rejected the proposal, demanding that Mr. Hansen immediately pay the full amount of the HLR/HLRF Deficiency, continue to fund all professional fees incurred by GFF, pay all of the lenders' attorneys' fees and costs, and release each of the lenders from any claims GFF and Mr. Hansen may have as a result of the lenders' acts and omissions in relation to the origination and administration of the GFF secured debt. The lenders also assert competing lien priorities on various loans and equipment making it near impossible for GFF to deliver titles and collateral back to its borrowers even after receiving payment in full from a borrower.

25. Based on the ongoing investigation into the operations of the company under Hadley's watch, and the facts discovered to date, the Debtors believe that they may have substantial set-off claims against certain of the GFF Lenders. In addition, since December 2015, Mr. Hansen already has contributed in excess of $2.5 million of his personal assets to fund the restructuring efforts, settle creditor claims, and pay attorneys'

fees to the lenders. For these and other reasons, the Debtors refused the lenders' forbearance demands.

26. In late July 2016, the day after the Debtors delivered their restructure forecast to the lenders, and despite the fact that it continued to receive periodic payments on the debt, United Valley Bank elected to move forward with collection litigation against GFF, HLR, HLRF, and Mr. Hansen in North Dakota state court.

27. On August 16, 2016, U.S. Bank filed suit against Mr. Hansen in the U.S. District Court for the District of North Dakota seeking to enforce his guaranties of the GFF debt and the HLR/HLRF Deficiency.

28. The Debtors believe that, absent the bankruptcy filings, the other lenders would have followed suit and filed collection actions of their own in the near future. The Debtors filed the bankruptcy cases to take advantage of the breathing room afforded by the Bankruptcy Code, to obtain a single forum for the resolution of the competing claims by and between the Debtors and their lenders, to preserve the value of their assets, and to maximize the recoveries to all creditors and parties in interest.

29. The Debtors intend to file a plan of reorganization in the very early stages of these cases that provides for the payment in full of all allowed claims. The plan will look very much like the restructure plan proposed to the lenders before these cases were filed.

## III. REQUEST FOR JOINT ADMINISTRATION.

30. The Debtors respectfully request that the Court enter an Order transferring the assignment of the Hansen case to the judge assigned to the GFF case and authorizing the joint administration of the Debtors' chapter 11 cases. Joint administration is necessary and appropriate to preserve judicial and estate resources, avoid duplication of efforts and reduce the time and expense associated with administering the Debtors' cases.

31. Joint administration is appropriate because the Debtors are affiliates,

and the material creditors in both cases are the same, and the cases involve common claims, factual, and legal issues. To the best knowledge of the Debtors, there are no conflicts of interest between the Debtors' estates. Mr. Hansen is owed money from GF Finance, but the amounts are not disputed, and Mr. Hansen will not receive any recovery on his claims until all third-party creditors have been paid.

32. This motion has been filed in the GF Finance case, but a copy of the Motion has been sent to the Judge assigned to the Hansen case. Once jointly administered, the Debtors request that all pleadings be filed in the GF Finance case, except monthly operating reports and proofs of claim, which should be filed in the case to which the proofs of claim relate.

33. The Debtors propose to use the caption below for the jointly administered cases:

| | |
|---|---|
| In re: | Chapter 11 |
| GF FINANCE, INC., ☐ | Case No. 2:16-bk-10282 |
| STEPHEN T. HANSEN, ☐ | Case No. 2:16-bk-10283 |
| Debtors. | |
| This Filing Applies to: ☐ Both Debtors ☐ Specified Debtor | |

WHEREFORE, the Debtors respectfully request that the Court enter an order transferring the assignment of the Hansen case to the judge assigned to the GFF case, authorizing the joint administration of the cases, and granting such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 7th day of September, 2016.

GALLAGHER & KENNEDY, P.A.

By: */s/Todd A. Burgess (019013)*
    Todd A. Burgess
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225
    Proposed Attorneys for Debtors-in-Possession

ORIGINAL filed and copies of the foregoing emailed this 7th day of September, 20016 to:

Thomas Kelly
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Kelly.tom@dorsey.com
Attorneys for U.S. Bank National Association

Brad Sinclair
Kaler Doeling LLP
3429 Interstate Blvd S
Fargo, ND 58103
Brad@Kaler-Doeling.com
Attorneys for Bremer Financial Corporation

Michael L. Gust
Anderson, Bottrell, Sanden & Thompson
4132 30th Avenue South, Suite 100
Fargo, ND 58106-0247
mgust@andersonbottrell.com
Attorneys for United Valley Bank

| 1 | |
|---|---|
| 2 | Thomas G. Wallrich<br>Cozen O'Conner<br>33 South 6th Street, Suite 4640 |
| 3 | Minneapolis, MN 55402<br>TWallrich@cozen.com |
| 4 | Attorneys for Alerus Bank |
| 5 | Citizens Community Credit Union<br>Attn.: Russ Jackson |
| 6 | 1215 N. 42nd Street<br>Grand Forks, ND 58203 |
| 7 | russj@citizens-cu.com |
| 8 | Jeffery A. Johnson<br>May Oberfell Lorber Attorneys |
| 9 | 4100 Edison Lakes Parkway, Suite 100<br>Mishawaka, IN 46545 |
| 10 | jjohnson@maylorber.com<br>Attorneys for 1st Source Bank |
| 11 | |
| 12 | U.S. Trustee<br>230 N. 1st Ave.. Suite 204<br>Phoenix, AZ 85003 |
| 13 | Christopher.J.Pattock@usdoj.gov |
| 14 | |
| 15 | /s/Todd A. Burgess |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |